UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KURT JOHN ROY,

    Plaintiff,

v.                                                                                    Case Number:  8:06-cv-712-T-17MAP

BOB WHITE, Sheriff of
Pasco County, Florida, and
RONALD HEINEMAN,

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' COUNTER MOTION FOR SUMMARY JUDGMENT

This cause comes before this Court on a Motion for Summary Judgment filed by Defendants, Bob White, Sheriff of Pasco County, Florida (White), and Ronald Heineman (Deputy Heineman), (Dkt. 19), filed on March 16, 2007, and a Motion for Summary judgment filed by Plaintiff, Kurt John Roy (Roy), (Dkt. 22), filed on March 19, 2007.  For the reasons set forth below, the Defendants' Motion for Summary Judgment is **Granted,** and the Plaintiff's Motion for Summary Judgment is **Denied**.  The following facts are taken as true for the purpose of resolving the pending motions.

## BACKGROUND

On February 13, 2003, Heineman, Deputy Sheriff, was driving down State Road 52 when he saw headlights in his rearview mirror.  When he looked back up he realized one set of the headlights disappeared.  Heineman decided to make a u-turn and go back to investigate what happened.  When Heineman turned around he discovered a car pulled over on the side of the

road[1]. He pulled up behind the car, and turned on his overhead lights. Heineman said he turned on the lights for safety reasons because they were on the side of the road at night. When Heineman got out of the car to investigate, he saw that no one was in the vehicle, but saw that someone was in the tree-line. The person appeared to be urinating, and the officer said something to the person who turned out to be Roy[2]. Roy replies, "Do you mind?", and then started to walk back to the road. Heineman determined that Roy's speech was slurred, and he was unsteady on his feet. However, Heineman did not smell any alcohol on his breath. Heineman suspected he might be drunk so he asked Roy to wait in his car, and then he called for an officer from the STEP unit[3] to come out. Roy had to wait only a few minutes until Corporal Steele arrived.

     Corporal Steele evaluated Roy; he observed that Roy had to grab the door to steady himself, he had a strong odor of alcohol on his breath, bloodshot eyes, and slurred speech. Corporal Steele also said that Roy told him he "had two beers", and he was "on his way home from work." Corporal Steele then was going to administer some field sobriety tests, but Roy stated that he would not take them. Roy informed Steele that because of a previous accident he can not walk right, and he would not be able to pass the test given to test for drunkenness. Steele informed Roy that he would have to base his decision of Roy's intoxication based on what he had seen, and Steele took Roy into the police station. At the station there is some dispute over whether or not Roy was notified of his option to take a breathalyzer test. Roy maintains that he

---

[1] In his testimony, Deputy Heineman stated that, while there was a turn off about 150 feet behind the vehicle, he did not think the headlights that disappeared could have turned off the road because they were traveling at a speed of 50 mph.
[2] There is controversy between the plaintiff and the defendant as to what was actually said by the officer. Deputy Heineman states that he asked Roy what he was doing and Roy stated that the first thing the deputy said was to hold on.
[3] The STEP (Selective Traffic Enforcement Program) unit is a group of officers specially trained in DUI investigation. In this case Corporal Steele, a member of the STEP unit, came out to investigate Roy.

was just given the implied consent form to sign, and he did not read it[4]. However, Steele states that he read Roy the implied consent, with the option to take the breathalyzer, but Roy still refused by signing the implied consent.

Corporal Steele then took the defendant's license away, and told him it would be suspended a year. The license was later reinstated by the Department of Motor Vehicles (DMV). When the case went to trial a jury found Roy guilty of DUI. However, on appeal the verdict was reversed because no one could place Roy in the vehicle.

## STANDARD OF REVIEW

Summary Judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issues as to any material fact and that the moving part is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party…" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The evidence presented must be construed in favor of the nonmoving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 249.

---

[4] Roy stated that after he was arrested he no longer wanted to do anything to cooperate with the officers.

**DISCUSSION**

In this case the plaintiff, Roy, is bringing two claims; the first is a claim of a violation of 42 U.S.C § 1983 by Deputy Heineman, and the second claim is a false arrest claim pursuant to Florida Statute § 768.28. In order to prevail on the § 1983 claim Deputy Heineman had to be a person acting under the color of law, and caused Roy to be deprived of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To prevail on the State law false arrest claim the arresting officer would have to have falsely arrested Roy.

I.   **Claim 1:  Violation of 42 U.S.C § 1983.**

The first claim is brought personally against Deputy Heineman. There are three types of encounters that can occur between a police officer and a citizen, "police citizen exchanges involving no coercion or detention, brief seizures or investigatory detentions, and full scale arrest." *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006) (citing *United States v. Perez*, 443 F.3d 772 (11th Cir. 1989)). For each type of exchange a different justification is required. A police officer may approach a person with no coercion, and as long as he feels free to leave, no justification is required. *Id.* For a brief seizure or investigatory stop, an officer would need to have reasonable suspicion. *Id.* at 1259. Finally, for an arrest an officer would have to have probable cause. *Id.*

In this case, Deputy Heineman did not arrest Roy[5]. So the question would be whether or not Deputy Heineman had the requisite reasonable suspicion that Roy was committing a crime in order to briefly detain him for an investigation. When looking at whether there was a reasonable suspicion one would look at the totality of the circumstances. *Id.* Also, there are four things to look at to determine if there was an arrest or a stop: purpose served by the detention, diligence with which officer pursued the investigation, scope and intrusiveness of the investigation and the

---

[5] This was even acknowledged by the plaintiff in this case.

4

duration of the detention. *United States v. Street*, 472 F.3d 1298, 1306 (11th Cir. 2006) (citing *United States v. Hardy*, 855 F.2d 753 (11th Cir. 1988).

In this case, Deputy Heineman saw headlights in his mirror disappear, and he did what most other officers would do, investigate. When he pulled up he put his overhead lights on for safety because he was on the side of the road. Deputy Heineman did not use the lights to pull over the vehicle, because the vehicle was already pulled over. The plaintiff cites the case *Brooks v. State* to show that Deputy Heineman's testimony that he turned on the lights for safety, is not controlling. 745 So.2d 1113 (1st DCA 1999). However, in *Brooks*, the police officer used the lights to show authority and pull over the car, whereas here the car was already pulled over. *Id.*

When he got out of his car, and started to approach the car, he realized that Roy was in the tree-line. When he walked up to talk to Roy, Roy turned around and started walking back to the vehicle that was on the side of the road. Deputy Heineman noticed Roy swaying and having trouble walking, and when he talked his speech was slurred. All of the above, when taken together, amount to a reasonable suspicion that Roy was impaired. Deputy Heineman then called an officer out from the STEP unit, just to verify that what he interpreted as impairment was correct. It was only a couple of minutes before Corporal Steele arrived, and was able to start his assessment.

This investigatory stop was not unreasonable, and neither was the few minute detention, necessary for the STEP unit member to arrive. The investigatory stop was supported by a reasonable suspicion justification.

    II.    **Claim 2: State Law False Arrest Claim**

This claim is brought against Bob White as Sheriff of Pasco County, Florida.

5

This is a claim that states Roy was falsely arrested on the night of February 13, 2003. To validly arrest an individual without an arrest warrant an officer would need to have probable cause. *Miller*, 458 F.3d at 1259. "Probable cause exist when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citing Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)).

In this case, Deputy Heineman told Corporal Steele how he saw the headlights disappear, and how he then turned around to investigate. Corporal Steele made contact with Roy and realized he was having trouble getting out of the vehicle. Corporal Steele observed that Roy was having trouble walking. Corporal Steele also smelt alcohol on Roy's breath. Roy told Corporal Steele that he was on his way home from work, and that he had two beers. During the conversation, Corporal Steele further discovered that Roy's eyes were blood shot, and his speech was slurred.

When Corporal Steele went to conduct the field sobriety test, Roy informed him that he would not take it. He said he was handicapped because of an accident he had and couldn't walk straight. Corporal Steele informed the defendant that he would have to base his investigation on what he had already observed, if Roy refused to take the field-sobriety test. Roy then refused, and Corporal Steele arrested him because, based on his observations, he believed Roy was intoxicated. Once at the station, Corporal Steele read Roy the implied consent stating that if he failed to submit to the breathalyzer his license would be suspended for a year. Roy contends that he was never read the form by Corporal Steele; however, even if this was true Roy still signed the form, and it was his responsibility to read the implied consent.

The Eleventh Circuit has found that the smell of alcohol from a vehicle coupled with the refusal to take a breathalyzer is enough to establish probable cause for a police officer to make an arrest. *Miller*, 458 F.3d at 1260.  In this case, Corporal Steele smelt alcohol on Roy's breath, witnessed him staggering and slurring his speech, and Roy refused to take any field sobriety test, or a breathalyzer test.  Corporal Steele also had Deputy Heineman's information about seeing the headlights disappear, and then how Deputy Heineman saw the vehicle on the side of the road.  Roy also informed him that he was on his way home from work, and he had had two beers.  All this together gave Corporal Steele probable cause to arrest Roy.

## **CONCLUSION**

It is clear, having read the pleadings, depositions, answers to interrogatories, and affidavits that there are no material issues of fact on the 42 U.S.C. § 1983 claim, nor the False Arrest State Law claim.  Accordingly, it is:

**ORDERED** that Plaintiff's motion for summary judgment, (Dkt. 22), against Defendants be **Denied**, and Defendants' motion for summary judgment, (Dkt. 19), against Plaintiff be **Granted**.  The Clerk of Court is directed to enter in favor of the Defendants and to close this case.

**DONE AND ORDERED** in Chambers in Tampa, Florida, this 21st day of June 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:  All parties and counsel of record

8